## SCHEE *against* HASSINGER.

### IN ERROR.

</div>

*Philadelphia,*
*Thursday,*
January 11.

UPON a writ of error to the Common Pleas of *Philadelphia* county, the case was as follows:

*Hassinger* the plaintiff below, brought the present action to *March* term 1807, against *Schee* the plaintiff in error, and a certain *William French*, as to whom the sheriff returned *non est inventus.* The declaration contained five counts. The 1st, was upon a promise, in consideration that the plaintiff, at the request of *Schee* and *French*, had delivered to them certain goods to be sold, and of a reasonable reward for the sale, to sell and dispose of them and *to render a reasonable account* upon request. The 2d, was upon a promise, in consideration of the delivery of certain goods to be sold, *to render a reasonable account* upon request. The 3d, was upon a might recover it upon a count for money had and received.

*Where goods were delivered to a factor to sell and remit, and he sold a part payable in coffee, and afterwards remitted sugars on account, but gave no further statement either of sales or receipts, the jury were at liberty to presume that the amount sales had come to his hands in money, and therefore the principal*

*Qu.* Whether, when goods are delivered to an agent to sell and remit, the law raises a promise by implication to *account*, so that an action on the case will lie for not rendering an account, although no express promise was made?

promise, on the same consideration, to sell, *account*, and pay over. The 4th, was upon a *quantum valebant* for goods sold and delivered; and the 5th, for money had and received. Plea, the general issue.

By the bill of exceptions upon which the cause came before this court, it appeared that the plaintiff gave in evidence upon the trial, a bill of lading of sixty-four barrels of pork, shipped by him on board the brig *Hyram*, *Graisbury*, for *Carthagena* and a market, deliverable to *Schee* and *French*, on account and risk of the shipper; the manifest of the brig, dated the 29th of *November* 1804, containing the sixty-four barrels of pork; and an account sales of thirty barrels of the pork, dated at *Cape François* the 1st of *January* 1806, and signed by *French*, in which he stated so much to have been sold on the plaintiff's account to the government, the net proceeds being 514 dollars 65 cents, *payable in coffee.* He then produced as a witness the master of the *Hyram*, who deposed that fifty barrels of the pork were landed at *Cape François* in the presence of *Schee*, who with *French* attended to the landing, and passed the same through the customhouse; that *Schee* soon after left the *Cape*, and went to the south side of the island, when *French* took the direction and management of the pork upon himself; that the bill of lading above mentioned was delivered to both *Schee* and *French*, who went in the brig to *Cape François;* and that the brig sailed from *Cape François* with the remaining fourteen barrels of pork, which were captured by a *French* privateer and totally lost. The plaintiff also gave in evidence an invoice of two hogsheads and eight barrels of *sugar*, amounting to 300 dollars 63 cents, signed by *French* at *Cape François* the 12th of *March* 1806, and shipped by him on board the *Aurora* for account and risk of the plaintiff; and lastly he exhibited his account against *Schee* and *French*, stating a balance due from them on account of the pork, of 532 dollars 37 cents.

After the evidence had been received and heard by the jury, the counsel for the defendant urged to the court, that an action on the case would not lie, under the facts and circumstances in evidence, because there was no express promise to account; and requested the court to charge the jury accordingly. But the court gave it in charge to the jury that the action did lie, and sealed a bill of exceptions. The jury found a verdict for the entire balance.

*Levy* for the plaintiff in error, argued that upon the evidence the action could not be maintained, and that *account render* was the only remedy. It is certainly the most appropriate action, where goods have been delivered to a bailiff, as in this case, to make the best benefit for the owner, and where the whole account stands open, so that it is impossible for a jury to settle it. It is also the most beneficial to the plaintiff, because in that form he is entitled to recover both what the bailiff has made, and what he might reasonably have made. *Co. Litt.* 172 *a.* But be this as it may, the want of an express promise is a decisive reason against the present action. The case of *Wilkyns* v. *Wilkyns* (*a*) is in point. The declaration was in *assumpsit* against the master of a ship, upon a promise, in consideration that the plaintiff at his request had delivered to him certain goods, to dispose of the goods, and to render an account upon his return from his voyage. The defendant pleaded in abatement, that he was the plaintiff's bailiff of the said goods, and to render an account of the profits; and therefore the plaintiff should have brought account, and not case. Upon a demurrer to this plea, three judges were of opinion that the action would lie, because it was brought upon an *express* promise, and not upon *a promise by implication.* But *Holt* doubted even of this, and told the plaintiff that he would not permit him to give the account in evidence, but that he should direct his proof only as to the damages for not accounting; for he would not travel into an account in such actions. Here is the strongest possible implication that an *express* promise is necessary, and the doubt of Lord *Holt* whether even that will answer. In the same case reported by *Salkeld,* 1 *Salk.* 9, the action is supported upon the same ground, an express promise. So in 1 *Show.* 71. The right of the principal to elect any other action than account render against his bailiff, is in all the cases upon the subject made to depend upon a covenant or express promise to account; as in *Hawkins* v. *Parke* (*b*). *Roll. Abr.* 16. 1 *Bac. Abr.* 37. And a very sufficient reason for it is, that the law will not imply a promise to account, for the purpose of making the bailiff answer in a form of action, in which he may be held to bail, and can have no allow-

(*a*) *Carth.* 89.                 (*b*) 1 *Roll. Rep.* 52.

328

ance for charges and bad debts. The impropriety of the action could not appear more clearly than in this case, where no evidence was given that the whole pork was sold, or that the defendant had received any thing but the amount remitted in sugars; and yet the object was to recover the full value of the pork. If a man receive money to expend for a particular purpose, and he lays out part, *indebitatus assumpsit* does not lie, but only account render. *Hartup* v. *Wardlow* (a). So by analogy *assumpsit* does not lie, where he has sold only a part; it is matter of account for auditors, and not for a jury.

*Hare* and *Condy* for the defendant in error, answered that as the objection was merely technical, and against the justice of the case, it ought not to be favoured. Account render is a very proper remedy between partners, where neither party is entitled exclusively to the partnership fund; but embarrassing as that form of action is, it ought not to be required, where the whole fund belongs exclusively to the plaintiff, and the court can compel the defendant to do justice in a simpler form. The old objections that the defendant cannot have allowance, and may be held to bail, have at this time no weight. The court will instruct the jury to make allowance in damages, and bail may be demanded in account render after the first judgment. The objection upon the ground of principle is equally unsound. There is a legal obligation in every factor to account; and the consequence of it is, what the law uniformly infers in such a case, a promise to perform the duty. It is the foundation of the action of account render; and surely before the statute of *Anne* which gave account to executors, they might upon the implied promise have maintained case against the bailiff. In *Wilkyns* v. *Wilkyns*, as reported by *Shower*, *Holt* puts his objection to the action, solely upon the inconvenience of giving a long account in evidence to the jury; but he agreed with the rest of the court that the action lay, and he said *there was no case where a man acted as bailiff, but he promised to render an account.* The same words are repeated by *Salkeld*, so that probably *Garthew's* report is not correct. What difference is there between a promise implied by law, and an express promise?

(a) 2 *Show.* 301.

None certainly as to their supporting an action. If no pro-
mise is implied, that is fatal; but as *Holt* explicitly asserts a
promise to account in all cases, and the law asserts the same
thing, that difficulty is out of the way. It is of no consequence
at present what the plaintiff can recover, whether his whole
demand, or damages for not accounting; it is enough under
the bill of exceptions if the action lies for any purpose. The
case of *Poulter* v. *Cornwall* (a) is express, that an action on
the case lies where a bailiff has refused to account; and the
jury were entitled to presume a refusal from the delay.
There is however another reason why the action lies. The
question under the defendant's exception is, whether it
will lie upon either of the counts; and the exception is the
same as a demurrer to the evidence; it means that no conclu-
sion which the jury could draw from the whole evidence,
would support either count. Now there was evidence enough
to support the count for money had and received. If goods
are delivered to a man to be sold, and he says nothing about
them for a long time, the jury may presume that he has sold
them and received the money. *Longchamp* v. *Kenny* (b) is
in point. The fixed price at which the ticket was to be sold
in that case, is the same as the account sales of the thirty
barrels in this. It was therefore wholly a question of evi-
dence, whether the defendant had received the money; and
from his delay and silence the jury might presume he had.

*Levy* in reply. It is not possible for the jury to presume
the receipt of money by the defendant. What may be in-
ferred from written documents is a question of law; and all
the evidence, except as to the mere delivery of the goods,
was in writing. In fact, the evidence negatived the receipt
of money. The sales to the government at *Cape François*
were payable in coffee, which not only implied a payment
thereafter, but a payment in goods. The difference between
this and *Longchamp* v. *Kenny* is, that here the defendant
shews what he did with the pork; and there the defendant
refused to give any account of the masquerade ticket. But
that case stands by itself. Lord *Mansfield* had great doubts
whether the action would lie at all; but from his great par-

*1810.*

SCHEE
v.
HASSINGER.

(a) 1 *Salk.* 9.                    (b) *Dough.* 137.

tiality to the action for money had and received, and particularly from this circumstance, that the defendant came prepared to resist the demand for the ticket, he at length maintained it. The other judges supported the action upon another count. If the count for money had and received could be supported by so forced a presumption as is contended for in this case, it would be a complete surprise on the defendant.

Tilghman C. J. delivered judgment.

After the evidence in this cause had been closed, the defendant's counsel requested the Court of Common Pleas to give their opinion, that " under the facts and circumstances of " the case, an action on the case would not lie." I take it that by asking the courts' opinion in this manner, the defendant intended to give the plaintiff all the advantage of a demurrer to the evidence. He could not have meant to take the opinion of the court upon matters of fact; because it was not the office of the court to give such opinion; nor if they had given an erroneous opinion, could there have been any redress by writ of error. What we have to consider then, is whether there was any evidence from which the jury might draw an inference to support the action. Two points arise out of the evidence. 1st, Whether when goods are delivered to an agent to sell and remit the proceeds to his principal, the law raises a promise to *account* by implication, so that an action on the case will lie for not rendering an account, although no express promise was made. 2d, Whether there was any thing in the evidence, from which the jury might infer that money had come to the hands of the defendant from the sale of the plaintiff's goods.

On the 1st point, the plaintiff's counsel cited the case of *Wilkyns* v. *Wilkyns*, reported by *Carthew, Salkeld* and *Shower.* As the reports do not exactly agree in what was said by the judges, I consider this case as no further an authority than on the point adjudged, which was, that an action on the case would lie against a bailiff on his *express* promise to account. No authority on either side has been cited directly in point, nor shall I give an opinion on this question. It is unnecessary, because I am satisfied that the judgment should be affirmed on the second point in this cause.

It appears from the bill of exceptions, that sixty-four barrels of pork, the property of the plaintiff, were by him deli-

vered to the defendant and one *French*, (who was included in the original writ as one of the defendants, and as to whom the sheriff returned *non est inventus*) to be sold on account of the plaintiff. Thirty barrels of this pork were sold to the government at *Cape François*, the net proceeds whereof were 514 dollars 65 cents payable in coffee, as appears by the account of sales; but it is not said when payable. The account sales is dated 1st *January* 1806, and in *March* 1806, the defendant shipped from the *Cape* to the plaintiff in *Philadelphia*, two hogsheads and eight barrels of sugar, amounting by the invoice to 300 dollars 63 cents. I will not say whether if I had been on the jury, I should have thought myself warranted in finding that money had come to the hands of the defendant, for the use of the plaintiff. But it is certain that the matter given in evidence was worthy of their consideration, as applied to the count for money had and received. Although the account of sales shewed that the pork was sold for coffee, and not for money, yet the remittance of sugar proved that a payment had been made to the defendant, which had enabled him to procure the sugar. It might have been expected too that he should have shewn at what time the coffee was payable, and why payment had not been made, and what had become of the rest of the pork. There was proof that some of it had been lost, but the rest was unaccounted for. These things, I say, were worthy of the jury's consideration; and if so, we cannot say what inference they might have drawn. In *Longchamp* v. *Kenny*, (*Doug.* 132) the plaintiff recovered on a count for money had and received, although there was no evidence that the defendant had received any money, but only that a masquerade ticket, the property of the plaintiff, had come to his hands, which he had not returned, nor given any account of. We have considered the principle of this case as law in *Pennsylvania*, and therefore there is no necessity of positive proof that money came to the hands of the defendant. Upon the whole, the record shews, that there was evidence applicable to one count of the declaration. Of this evidence the jury were judges. If they found against the weight of evidence, the defendant's remedy was by motion for a new trial. I see no error on the record, and am therefore of opinion that the judgment be affirmed.

                         Judgment affirmed.